# EXHIBIT A

Approved by the Michigan State Court Administrator
and the Department of Mental Health

JDC CODE: ORD

| STATE OF MICHIGAN PROBATE COURT COUNTY OF HILLSDALE | ORDER FOLLOWING HEARING ON PETITION FOR ADMISSION | FILE NO. |
|---|---|---|

In the matter of ___CLIFFORD C. TYLER, JR.___

1. Date of hearing: __January 2, 1986__    Judge of Probate: __ALBERT J. NEUKOM__

2. A petition has been filed by __Tamara Marie Tyler__ asserting that the above named individual is a person requiring treatment.

3. The Court finds that notice of hearing has been given according to law.

4. The individual who is the subject of the petition was present in court ☐ with ☒ without a jury. Also present were:

   __Gerald Denney__, attorney for the individual, and

   __James Hayne__, attorney for the petitioner.

5. ☐ Testimony of a physician was waived in open court by the individual and the individual's attorney.

6. Testimony was given by __Tamara Tyler, Respondent, Dr.__
   __STIPULATION__

THE COURT FINDS:

7. ☒ By clear and convincing evidence, the individual is a person requiring treatment because the individual is mentally ill, and as a result of that mental illness:
   ☒ can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
   ☐ is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.
   ☒ whose judgment is so impaired the individual is unable to understand the need for treatment. Continued behavior as the result of this mental illness can reasonably be expected, on the basis of competent medical opinion, to result in significant physical harm to self or others.

   __Ypsilanti Regional Center__ hospital can provide treatment which is adequate and appropriate to the individual's condition.

   There ☐ is ☒ is not a treatment program other than hospitalization adequate to meet the person's treatment needs.

8. ☐ The individual is not a person requiring treatment.

(PLEASE SEE OTHER SIDE)

Do not write below this line - For court use only

ORDER FOLLOWING HEARING ON PETITION FOR ADMISSION, Form No. PCM214, Revised 3/81    MCL 330.1401; MSA 14.800(401), MCL 330.1468; MSA 14.800(468)

IT IS ORDERED that the individual:

9. ☐ be hospitalized in the hospital mentioned above for a period not to exceed 60 days.

10. ☐ undergo a treatment program for a period not to exceed 90 days as follows:

   ☐ hospitalization in the above mentioned hospital for a period not to exceed _30_ days, but in no event more than 60 days, and thereafter:

   ☐ alternative treatment, under the supervision of _Paul Sasha or_ _____ as follows: _Personel at Foote Hospital, Jackson Mich_

11. ☐ is not a person requiring treatment.

_January 2, 1986_
Date

_[signature]_
Judge of Probate    Albert J. Neukom

# EXHIBIT B

# Hillsdale Psychological Institute, PLLC

**37 Waldron Street**
**Hillsdale, Michigan 49242**
Phone: 517-439-4596 Fax: 517-439-4597

## EVALUATION FOR CONCEALED WEAPONS PERMIT

**NAME:** CLIFFORD C. TYLER
**DOB:** 12-02-41
**DOE:** 03-12-12, 03-15-12, 03-27-12

### REASON FOR REFERRAL:

Mr. Tyler referred himself for an evaluation in order to have his record cleared, and obtain a permit for a concealed weapon, following an involuntary psychiatric hospitalization thirty-two years ago, in 1985.

### BACKGROUND INFORMATION:

Mr. Tyler is a seventy year old male who sought out an evaluation when he was denied a permit to carry a concealed weapon. This reportedly was based on the fact that he had a history of an involuntary commitment twenty-five years ago for "depression with suicidal thoughts". The incident in question occurred in 1985 when Mr. Tyler's first wife filed for divorce. The petition and physician's certificate are illegible in some parts as are the signatures of the physicians. However, it appears that Mr. Tyler was "depressed and suicidal at this time, not sleeping, crying non-stop, and wanting to commit suicide". The petition further ordered that Mr. Tyler be transferred to Ypsilanti Regional Center for an evaluation. Mr. Tyler is unsure as to the time period for which he was held. Records for this hospitalization are unavailable as Ypsilanti State Hospital closed many years ago. He reported that there was no follow-up therapy upon discharge, nor was he medicated. It is important to note that this is a rural area and there were limited mental health services available in the mid 1980's.

Mr. Tyler stated that he has never received psychotropic medication. He said that he has never experienced a depressive episode other than the aforementioned. He does not abuse alcohol or street drugs. Mr. Tyler does not have a criminal history. Mr. Tyler has never received a head injury. However, it is important to note that two years prior to the above incident, he was involved in a traumatic motor vehicle accident where both of his arms and both of his legs were broken. He was allegedly hospitalized for a lengthy period of time and then confined to a wheelchair for the next two years. Once he was able, Mr. Tyler returned to the workforce.

Mr. Tyler remarried thirteen years ago. He has a close relationship with his two daughters from his first marriage, "and I even have Christmas with my ex-wife and her husband". Mr. Tyler has suffered from prostate cancer and melanoma. His physician was contacted by this examiner and she stated that she has not noticed any type of mental

illness with Mr. Tyler. Her letter should be attached to this report or will be sent separately to Mr. Tyler's attorney.

Mr. Tyler enjoys shooting pistols competitively. He is attempting to obtain a permit for carrying a concealed weapon. Prior to applying for this permit, he has used guns as a hobby, with no incident of harm to himself or others. Mr. Tyler stated that he has "always had guns" and never was informed that he could not have them in his possession.

## MENTAL STATUS AND PERSONALITY TESTING:

Mr. Tyler arrived to the evaluation sessions well groomed and appearing his stated age. He was oriented times 3, with no evidence of thought disorder. Furthermore there was no evidence of hallucinatory phenomena. Cognitive ability appeared to be in the average range. Mr. Tyler displayed good short-term memory; however, due to age, he had some difficulties remembering specific dates relating back twenty-five to thirty-five years.

Results of the Minnesota Multiphasic Personality Inventory-2 revealed that persons who scored such as Mr. Tyler were defensive and possibly naïve to the test-taking process to the extent that the results were invalid. Mr. Tyler did not complete high school. He has no education past high school. He admitted to some problems with comprehension. It is the belief of this examiner that the results were rendered invalid due to Mr. Tyler's lack of education, issues with comprehension, and difficulties with the test-taking process.

## SUMMARY:

Mr. Tyler sought out an evaluation due to his current inability to obtain a concealed weapons permit based on the fact that he was committed to a psychiatric hospital in 1985. Mr. Tyler has no other history of mental illness other than what occurred in 1985. This appeared to be a brief reactive depressive episode in response to his wife divorcing him. He does have the papers from the petition, but further records have most probably been destroyed and are not accessible. This examiner contacted his primary care physician who stated that she has not seen evidence of a mental illness. He does not use street drugs or abuse alcohol. He has been using weapons competitively and has caused no harm to himself or others. There is no evidence of mental illness within this evaluation.

Respectfully,

Marianne A. Osentoski, PhD, LP
Licensed Psychologist

suppressed

# EXHIBIT C

# McCullough, Vargas and Associates, Inc.

**BEHAVIORAL HEALTH SERVICES**

110 Reading Ave.
Jonesville, MI 49250
Phone (517) 849-2333
Fax (517) 849-2906

January 16, 2012

Substance Abuse Evaluation

Name: Clifford Tyler
DOB: 12/2/1941 (70)

### Presenting Situation:
Clifford Tyler is a 70 year old Caucasian male who was referred to McCullough, Vargas and Associates, Inc. for a substance abuse evaluation by his attorney McCarthy Lucas. Clifford reported that he is seeking to obtain a Concealed Weapons Permit and his application was denied on December 8, 2010 by the Concealed Weapons Licensing Board. Clifford stated that the board found him in violation of the Firearm Laws of Michigan based on a Mental Illness Order that was entered in the Hillsdale County Probate Court on January 2, 1986. Clifford reported that in the summer of 2011 he completed a concealed weapons class, paid $110.00 at the Hillsdale County Courthouse and was denied because he was institutionalized 28 years ago. Clifford stated that when he went to the county meeting the sheriff called him a liar. Clifford reported that an FBI report was run on him and his lawyer was sent the results which did not show anything on him.

Clifford reported that the reason he is seeking a Concealed Weapons Permit is because he goes to gun shows where he swaps and trades guns on the weekends. He stated that right now he can't get a permit on guns, be in possession of them, transport them or hunt with them.

### Alcohol/Drug Use History:

**Alcohol** – Clifford stated that he first drank alcohol at the of 22-23, drinking one beer a week. He stated that he would not drink more than a 6-pack in a month. Clifford reported that his last drink of alcohol was on Christmas of 2011.

### Test Interpretation:
Clifford scored a zero (0) on the Michigan Alcohol Screening Test (MAST) and a zero (0) on the Drug Abuse Screening Test (DAST-20). Clifford's score on the MAST does not indicate a problem with alcohol use, and his score on the DAST indicates that it is not suggestive of a drug use problem.

### Personal History:
Clifford reported that he grew up in the Detroit area from ages 1-14 years old. He stated that he then moved to Hillsdale and has been here ever since. Clifford stated that he attended school in the Hillsdale School system. He reported that he lived on a farm in a

Clifford Tyler
January 16, 2012
Page 2

two-parent home. He stated that he has two sisters, one older & one younger, and he has one younger brother. Clifford stated he feels that he had a good childhood. Clifford reported that he is not aware of any mental illness or addictions that family members may have.

Clifford reported that he worked for Plymouth Flush Door from the age of 17-35 years old. He stated that he got married at the age of 22 and was married for 23 years. He reported that he has two daughters from this marriage, and he got a divorce at the age of 45 years old. Clifford stated that he has a good relationship with his daughters who live in Jackson.

Clifford reported that when he was a semi-truck driver for Plymouth Flushing when he had a bad accident. He reported that he was totally disabled and was in a wheel chair for 2 ½ years. Clifford stated that since he couldn't work his wife took a job at the Jackson prison. He stated that he took a settlement from the insurance company of $60-70,000. Clifford stated that his wife told him that she was going to stay in Jackson since it was closer to her work. Clifford reported that his wife borrowed money from her mother and then left him and their daughters. He stated that she ran away with another man and six months later she contacted Clifford asking him to file bankruptcy with her.

Clifford stated that his wife had gone through all his money, taking everything and he had to go to Hillsdale State Savings Bank where he made arrangements to get a loan to help him financially. Clifford reported that at this time he was feeling very overwhelmed with his situation. He stated that when he was served his divorce papers in 1985, 27 years ago, he sat in the middle of the floor at home pounding his head. He stated that his daughters got scared and called the police. Clifford reported that the police believed he was mentally ill and took him to the Sheriff's Department, contacting his 18 year old daughter to assist them with the necessary steps to have him go to a Psychological Facility for an evaluation.

Clifford reported that he was transported to the Ypsilanti Regional Center for a psychological evaluation. Reports that were provided by Clifford state that he had bruises on his head and face. The reports also state that he had suicidal thoughts, was depressed, sobbing, shaking and had not been sleeping. Clifford reported that he was in the Psyche Ward at the Center for 2-4 weeks. He stated that he refused the medications they prescribed because he feared that they would mess up his thinking.

Clifford reported that after he returned home he returned to work for R & D Express, giving up his disability money and working for another 18-19 years. Clifford stated that with the help of Hillsdale State Savings Bank he consolidated his bills to help himself and his daughters financially.

Clifford Tyler
January 16, 2012
Page 3

**Legal History:** Clifford reported no past legal involvement.

**Diagnostic Impression:** Clifford does not meet the DSM-IV-TR criteria for a substance abuse diagnosis.

**Recommendations:**
From all the information the client provided it does not appear that the client has a substance abuse problem and therefore no recommendations are being made regarding substance abuse treatment.

Respectfully,

*Karen Rozelle, MA, LLPC*

Karen Rozelle, MA, LLPC
Substance Abuse Counselor

This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulation (42 CFR, Part 2) prohibits you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The Federal rules restrict any use of the information to criminally investigate or prosecute the patient.
UAL MR301

# EXHIBIT D

# NICS



## Guide For Appealing A Firearm Transfer DENIAL

*Your Rights and Responsibilities*

To be provided by the FFL
NTN: 1SS5-YvB

## NICS Section Information:

Facsimile
**1-888-550-6427**

Telecommunications Device for the Deaf (TDD)
**1-877-NICS-TTY**

NICS Web Site
**www.fbi.gov/hq/cjisd/nics/index.htm**

NICS Appeals E-Mail Address
**nicsappeals@leo.gov**

NICS E-mail Address
**a_nics@leo.gov**

NICS Customer Service
**1-877-444-NICS (6427)**

(Rev. October 2003)

## What Prohibits an Individual From the Transfer or Possession of a Firearm?

A delay or deny message from the NICS indicates that either you or another individual with a similar name and/or similar descriptive features has been matched with one or more of the following federally prohibitive criteria:

- Persons convicted of/under indictment (or information) for a crime punishable by imprisonment for a term exceeding one year, whether or not sentence was imposed. This includes misdemeanor offenses with a potential term of imprisonment in excess of two years, whether or not sentence was imposed.

- Persons who are fugitives from justice (the subject of an active warrant).

- An unlawful user and/or an addict of any controlled substance.

- Persons adjudicated as a mental defective or involuntarily committed to a mental institution or incompetent to handle their own affairs.

- An alien illegally/unlawfully in the United States, with the exception of non-immigrants pursuant to Subsection (y)(2).

- Persons dishonorably discharged from the United States Armed Forces.

- A renouncer of United States citizenship.

- The subject of a protective order.

- Persons convicted of a misdemeanor crime of domestic violence.

If you have been **denied** by a Federal Firearms Licensee (FFL) from receiving a firearm/firearm permit because of a record in the FBI's National Instant Criminal Background Check System (NICS), you may submit a request to appeal your denial decision. The provisions for appeals are outlined by the NICS Regulations at 28 Code of Federal Regulations, Part 25.10 and Subsection 103 (f) and (g) and Section 104 of the Brady Handgun Violence Prevention Act (Brady Act) of 1993.

## Requesting The Reason For Your Denial

You may request the reason for your denial by writing to:

Federal Bureau of Investigation
NICS Section
Appeal Services Team, Module A-1
Post Office Box 4278
Clarksburg, WV 26302-9922

■ **You must include** your complete mailing address in the request. You may also submit your request by facsimile or by e-mail. (See reverse side for the NICS facsimile number and e-mail address.)

■ **You must include** your NICS Transaction Number (NTN) with your written request. The NTN can be obtained from the FFL.

■ The NICS Appeal Services Team (AST) **cannot** initiate an appeal for you at the request of another individual without your written *and* signed authorization.

■ You may submit your fingerprints, which **must** be rolled by a law enforcement agency, with your initial written correspondence. *The submission of fingerprints with your initial written request may hasten the appeal process.*

■ The NICS AST will respond to your written request by providing the reason for your denial within five business days **after** receiving your correspondence.

## Appealing your Denial

The following information outlines the steps you must take to either challenge your record or make a claim that the record used as the basis for your **denial** pertains to someone other than you.

## Questions of Identity

In cases involving criminal history records, if fingerprints are not submitted with your initial request, you may be required to submit your fingerprints to establish *positive proof* of your identity. If your fingerprints are required by the NICS Section and you wish to further the appeal process, you must have your fingerprints rolled by a local law enforcement agency. The law enforcement agency rolling your fingerprints **must stamp** its agency name, address and telephone number on the fingerprint card *and* the reason fingerprinted must be marked "For NICS Purposes."

## Record Challenges

You may challenge the accuracy of the record used in the evaluation of your denial or declare that your rights to obtain a firearm have been restored, etc. If you have any additional information (e.g., court documentation) that may assist the NICS AST in correcting or updating the record, you should attach the information to your written correspondence. The NICS AST will evaluate your information and provide you with its decision on your appeal **in writing**.

■ If the NICS AST is unable to resolve your appeal, **you** will be provided information to contact the agency that created the record. For correction of the record, you must follow procedures established by the state or federal agency that maintains the original record. The FBI, as custodian of arrest information that has been submitted voluntarily by local, state and federal law enforcement agencies, does not have the authority to change such records **unless** notified to do so by an authorized criminal justice agency.

You may submit *any* information to the originating agency that would assist with the correcting and/or updating of your record. *(This may also hasten the appeal process.)*

■ If the **originating agency** corrects your record, the NICS AST must be notified and provided documentation indicating such. The NICS AST will verify and evaluate the information and provide you with its decision on your appeal **in writing**.

## Appeal Inquiry

Any inquiry concerning your appeal should be directed to the NICS AST **in writing**. Due to the Privacy Act of 1974, the NICS Section cannot disseminate *specific* information to you via the telephone.

## Successful Appeal

If your appeal is successful, you will be notified by the NICS AST that your denial has been overturned and that you are eligible to receive a firearm. You will be issued a letter, which **must** be presented to the FFL who initiated your background check.