UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CLIFFORD CHARLES TYLER,

        Plaintiff,

                                 Case No. 1:12-CV-523

v.

                                 HON. GORDON J. QUIST

ERIC HOLDER, et al.,

        Defendants.

_____/

## OPINION REGARDING FEDERAL DEFENDANTS' MOTION TO DISMISS

Plaintiff, Clifford Charles Tyler, seeks declaratory and injunctive relief against Defendants for their alleged violation of Plaintiff's right to keep and bear arms, as protected by the Second Amendment to the United States Constitution.  (Docket no. 1.)  Federal Defendants[1] (Defendants) have filed a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket no. 23.)  For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

## I.  BACKGROUND[2]

Plaintiff alleges that 27 years ago—on January 2, 1986—he was involuntarily hospitalized by the Hillsdale County Probate Court for a period not to exceed 30 days.  Plaintiff further alleges that the "primary reason for commitment was a risk that Plaintiff might commit suicide due to an

_____

[1]The Defendants for this motion are Eric Holder, United States Attorney General; the United States Department of Justice; the Bureau of Alcohol, Tobacco, Firearms and Explosives; B. Todd Jones, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Thomas E. Brandon, Deputy Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; the Federal Bureau of Investigation; Robert S. Mueller, III, Director of the Federal Bureau of Investigation; and the United States of America.

[2]The following facts are taken from Plaintiff's Complaint.

emotionally devastating divorce." However, Plaintiff alleges, he is no longer "a risk to himself or to other people and does not have issues with substance abuse." On or about February 7, 2011, Plaintiff attempted to purchase a firearm, but was informed by the Hillsdale County Sheriff's Office that he was not legally allowed to possess a firearm because he was a person "adjudicated as a mental defective or involuntarily committed to a mental institution or incompetent to handle [his] own affairs." (Ex. D, Docket no. 1-1, Page ID 26.)

In or about August 2011, Plaintiff submitted an appeal of his denial to purchase a firearm to the Federal Bureau of Investigation's (FBI) National Instant Criminal Background Check System (NICS) section. On or about September 8, 2011, Plaintiff received a letter from the FBI indicating that Plaintiff's appeal was under review and confirming that the relevant federal prohibition to Plaintiff was 18 U.S.C. § 922(g)(4). On or about September 30, 2011, Plaintiff's counsel mailed a letter to the NICS section providing additional information about Plaintiff's circumstances. On or about January 2, 2012, the NICS section mailed Plaintiff a letter confirming that Plaintiff was federally prohibited from acquiring a firearm under 18 U.S.C. § 922(g)(4), which prohibits from possessing a firearm "any person ... who has been adjudicated as a mental defective or who has been committed to a mental institution." (*See* Ex. G, Docket no. 1-2.) The letter further states that "[u]ntil [Plaintiff's] state has an ATF approved relief from disabilities program in place [Plaintiff's] federal firearm rights may not be restored." (*Id.*) Under 18 U.S.C. § 925(c), an individual prohibited from acquiring a firearm may apply to the Attorney General for relief from the prohibition, which the Attorney General may grant if "the applicant will not be likely to act in a manner dangerous to public safety and . . . the granting of the relief would not be contrary to the public interest." However, beginning in 1992, the United States Congress has expressly denied

funding to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) "to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)." *See* Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729, 1732.  This prohibition has since remained in effect.  *See, e.g.*, Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552, 609.  Thus, Plaintiff alleges, ATF does not actually administer a relief from disabilities program (RFDP) under 18 U.S.C. § 925(c).  In 2008, Congress created an alternative route for relief from federal prohibitions: states may elect to establish an ATF-approved RFDP.  *See* NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, 121 Stat. 2559, 2569–70.  To date, the State of Michigan has not established an ATF-approved RFDP.  Therefore, Plaintiff alleges, he is unable to avail himself of either state or federal relief from 18 U.S.C. § 922(g)(4).

Plaintiff's Complaint alleges three counts, two of which are applicable to the present Defendants.  Plaintiff claims that Defendants have violated his Second Amendment right to keep and bear arms and his Fifth Amendment right to due process of law.[3]

## II. DISCUSSION

### A. Second Amendment Claim

The Second Amendment prescribes, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's preexisting right to keep and bear arms regardless of militia

---

[3]Count III is a Fourteenth Amendment claim against state Defendants Col. Kriste Kibbey Etue, the Hillsdale County Sheriff's Office, Hillsdale County Sheriff Stan W. Burchardt, and Michigan Governor Rick Snyder.

service.  554 U.S. 570, 592, 598–600, 128 S. Ct. 2783, 2797, 2801–02 (2008).  In essence, the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635, 128 S. Ct. 2783, 2821.  However, this right is not unlimited.  *Id.* at 626, 128 S. Ct. 2783,  2816.  Historically, the Court noted, the right to keep and bear arms "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*

The Sixth Circuit has adopted a two-pronged framework for resolving Second Amendment challenges. *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).  "Under the first prong, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood." *Id.* (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)).  If the government demonstrates that the challenged statute regulates activity that falls outside the scope of the Second Amendment as historically understood, "'then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.'" *Id.* (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 702–03 (7th Cir. 2011).  If, however, the government does not establish that the activity is categorically unprotected, the second inquiry is into "'the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.'" *Id.* (quoting *Ezell*, 651 F.3d at 703).  Under the second prong, a court should apply the appropriate level of scrutiny. *Id.*  If the law satisfies the applicable standard, it is constitutional; if it does not, it is invalid.  *Id.*

4

### 1. Scope of the Second Amendment

In *Heller*, the Supreme Court characterized the Second Amendment as limited by whether an individual is *qualified* to exercise his or her right.  *Id.* at 635, 128 S. Ct. 2783, 2822 ("Assuming that Heller is not *disqualified* from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." (emphasis added)).  The Supreme Court also expressly observed, "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Heller*, 554 U.S. at 626, 128 S. Ct. at 2816–17.  Such measures, the Court noted, are "presumptively lawful."  *Id.* at 626–27 & n.26, 128 S. Ct. at 2816–17 & n.26.  Recent Court of Appeals cases have similarly framed the nature of the right to keep and bear arms.  *See, e.g.*, *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (observing that expungement of a conviction might "allow [the defendant] to regain his Second Amendment rights"); *United States v. Skoien*, 614 F.3d 638, 639 (7th Cir. 2010) (en banc) ("The reference to being 'disqualified' relates to prior convictions and mental illness.").  While the Sixth Circuit has classified the Supreme Court's observation on longstanding prohibitions as dicta, it has accorded it "significant weight" in its analysis, *United States v. Khami*, 362 F. App'x 501, 508 (6th Cir. 2010), and acknowledged that lower courts are "'obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale.'"  *Id.* (quoting *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002)).

At least two federal circuit courts have considered challenges to 18 U.S.C. § 922(g)(4).  In *Petramala v. United States Department of Justice*, the Ninth Circuit affirmed a district court's dismissal of a Plaintiff's Second Amendment claim for failure to state a claim.  481 F. App'x 395,

396 (9th Cir. 2012).  Citing *Heller*, the court held that § 922(g)(4) "imposed constitutionally

permissible limits on [Petramala's] right to bear arms."  *Id.*  Similarly, the Fourth Circuit held that

an appellant-defendant's claim that § 922(g)(4) violated his Second Amendment right "founder[ed]

on the very case upon which it relie[d]" because *Heller* recognized the validity of "longstanding

prohibitions on the possession of firearms by the mentally ill."  *See United States v. McRobie*, No.

08-4632, 2012 WL 82715, at * 1 (4th Cir. June 14, 2010).

In this case, Plaintiff challenges § 922(g)(4) as applied to him because he was only once

committed to a mental institution over 27 years ago and he lacks any federal or state means by which

to regain his Second Amendment right.  Plaintiff argues that there is, or should be, a legal distinction

between persons who are *presently* mentally ill and those who were *previously* committed for mental

illness but no longer present a "real danger".[4]  Thus, Plaintiff contends that the correct analysis

under the first prong of *Greeno*, 679 F.3d at 518, is not whether the Second Amendment extends to

the mentally ill, as described in *Heller*, but whether it extends to individuals who do not present a

real danger, which Plaintiff does not.[5]  (Docket no. 24, Page ID 194.)  Using that approach, Plaintiff

argues that none of the historical examples cited by Defendants "stand for the proposition that once

someone is committed they are then treated as forever mentally ill and unable to bear arms."  (*Id.*

at 195.)

The Court agrees that the historical evidence cited by *Heller* and Defendants does not

directly support the proposition that persons who were once committed due to mental illness are

---

[4]Presumably referring to individuals who no longer present a "real danger" to themselves or society.

[5]Accepting Plaintiff's allegations as true and construing the Complaint in the light most favorable to Plaintiff, *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009), Plaintiff "currently is not a risk to himself or to other people." (Compl., ¶ 25, Docket no. 1, Page ID 6.)

forever ineligible to regain their Second Amendment rights.  However, Plaintiff's position that the right to keep and bear arms, as historically understood, extends to previously committed individuals who are no longer a "real danger," is not supported by the case law or historical evidence.  The Supreme Court has recognized as "presumptively lawful" longstanding prohibitions on the possession of firearms by entire classes of people, including "the mentally ill."  *Heller*, 554 U.S. at 626–27 & n.26, 128 S. Ct. at 2816–17 & n.26.  Thus, the Supreme Court has refused to extend the right to bear arms to persons who are defined as mentally ill.  In the case of § 922(g)(4), Congress has defined mentally ill persons to include "any person ... who has been committed to a mental institution."  Therefore, the Court finds that the government has satisfied its burden of establishing that the Second Amendment, as historically understood, does not extend to Plaintiff.  *Greeno*, 679 F.3d at 518.

### 2. Intermediate Scrutiny

Even if this Court were to find that the government has failed to establish that the Second Amendment does not extend to Plaintiff, the Court finds that 18 U.S.C. § 922(g)(4) would survive intermediate scrutiny under the second prong in *Greeno*, 679 F.3d at 518.

Although neither the Supreme Court nor the Sixth Circuit has considered the precise issue, several circuit courts have concluded that intermediate scrutiny is the correct standard for § 922(g) challenges.[6]  *See, e.g.*, *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2012) (upholding § 922(g)(3) under intermediate scrutiny); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010)

---

[6]The parties also largely agree that the appropriate level of scrutiny under the *Greeno* framework is intermediate scrutiny.  (*See* Mem. Law Supp. Fed. Defs.' Mot. Dismiss, Docket no. 23, Page ID 159–62; Pl.'s Resp. Fed. Defs.' Mot. Dismiss, Docket no. 24, Page ID 197.)

(upholding § 922(g)(8) under intermediate scrutiny); *but see Ezell*, 651 F.3d at 708–09 (applying to a city ordinance a "more rigorous" standard than intermediate scrutiny but "not quite 'strict scrutiny'"). The Supreme Court has excluded the possibility of a rational-basis review. *Reese*, 627 F.3d at 801 (citing *Heller*, 554 U.S. at 628–29 & n.27, 128 S. Ct. at 2817 & n.27) ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."). The Supreme Court has also implicitly rejected strict scrutiny review. *See Heller v. District of Columbia* ("*Heller II*"), 698 F. Supp. 2d 179, 187 (D.D.C. 2010); *Heller*, 554 U.S. at 688, 128 S. Ct. at 2851 (Breyer, J., dissenting) ("[T]he majority implicitly, and appropriately, rejects [applying strict scrutiny] by broadly approving a set of laws . . . whose constitutionality under a strict scrutiny standard would be far from clear."). Thus, the Court will apply intermediate scrutiny to § 922(g)(4).

"To withstand intermediate scrutiny, a statutory classification must be substantially related to an important government objective." *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 1914 (1988); *see also Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002).

In this case, the parties disagree over the whether the statutory classification is "substantially related" to the government's interest in preventing firearm violence.[7] Plaintiff states that his "sole contention" is that for a continuing prohibition under Section 922(g)(4) to be "substantially related to preventing firearm violence, an option to request a post-commitment review to determine current

---

[7]Plaintiff "readily agrees that preventing firearm violence is an important government interest." (Mem. Supp. Pl.'s Resp. Defs.' Mot. Dismiss, Docket no. 24-1, Page ID 198.) The Court also notes the other important government interests identified by Defendants: the preservation of "community peace and public safety," *Grider v. Abramson*, 180 F.3d 739, 751 (6th Cir. 1999), and the protection of individuals from self-inflicted violence, including suicide, *Washington v. Glucksberg*, 521 U.S. 702, 735, 117 S. Ct. 2258, 2275 (1997); *Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998). Plaintiff does not appear to contest these important government interests.

8

fitness and potentially obtain relief from Section 922(g)(4) must exist."  (Mem. Supp. Pl.'s Resp. Defs.' Mot. Dismiss, Docket no. 24-1, Page ID 198.)

Intermediate scrutiny requires a "substantial" relationship between the statutory scheme and the government's important interest.  "All that is required is 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir. 2003) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 3035 (1989)); *see also United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (requiring "the fit between the challenged regulation and the asserted objective to be reasonable, not perfect").

Defendants argue that it was reasonable for Congress to rely on past commitment due to mental illness, rather than a particularized assessment of future dangerousness, as a basis for disarmament.  As the Supreme Court has observed, "Congress' intent in enacting §§ 922(g) and (h) . . . was to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112 & n.6, 103 S. Ct. 986, 992 & n.6, *superceded by statute on other grounds as recognized by Logan v. United States*, 552 U.S. 23, 27, 128 S. Ct. 475, 479 (2007)*; see also Barrett v. United States*, 423 U.S. 212, 220, 96 S. Ct. 498, 503 ("The history of the 1968 Act reflects a similar concern with keeping firearms out of the hands of categories of potentially irresponsible persons.") Therefore, Congress did not limit its prohibition to persons who had already committed violent acts, but instead "considered the mere risk or potential for violence or irresponsible use sufficient reason to prohibit certain categories of persons from possessing firearms." *United States v. Chamberlain*, 159 F.3d 656, 660 (1st Cir. 1998), *overruled on other grounds by United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012).

9

For purposes of § 922(g)(4), Congress relied on a history of adjudicated mental illness or commitment as an indicator of future dangerousness. *See, e.g.*, 114 Cong. Rec. 14,733 (1968) (statement of Sen. Long) (observing that the bill was intended to exclude classes of persons, including the mentally ill, who "by their actions have demonstrated that they are dangerous, or that they may become dangerous."); *id. at* 21829 (Rep. Bingham) (emphasizing that the purpose of prohibiting "mental incompetents" from possessing firearms was to "prevent firearms from falling into the hands of those most likely to misuse them"). As the First Circuit found in *Rehlander*,

> [I]n section 922, Congress did not prohibit gun possession by those who were or are mentally ill and dangerous, and such a free floating prohibition would be very hard to administer, although perhaps not impossible. That is why, as with the ban on prior felons, Congress sought to piggyback on determinations made in *prior judicial proceedings* to establish status.

666 F.3d at 50 (emphasis in original). Similarly, the First Circuit has noted, to require a full-scale adversarial proceeding and finding that a person is mentally ill and "poses a likelihood of harm to himself or others" before giving effect to § 922's prohibitions "would undermine Congress's judgment that risk or potential, not likelihood, probability, or certainty, of violence is all that is required." *Chamberlain*, 159 F.3d at 664.

In this case, Plaintiff argues that in order for § 922(g)(4) to be substantially related to the aforementioned important government interests, Plaintiff must have an opportunity to seek post-commitment review of his mental health to regain his right to bear arms. The Court disagrees. Intermediate scrutiny only requires Defendants to show that the statutory scheme is a reasonable fit—not a perfect fit—to the government's important interest in preventing firearm violence, public safety, and reducing self-inflicted violence. *Neinast*, 346 F.3d at 594 (quoting *Bd. of Trs. of State Univ. of N.Y.*, 492 U.S. at 480, 109 S. Ct. at 3035). Here, Defendants have presented sufficient

evidence that Congress elected to rely on a person's history of past commitment and judicial adjudications of mental incompetence as indicators of a risk of gun-related violence.  This method for determining risk of dangerousness is reasonably related to the government's stated interests. Intermediate scrutiny does not require the individualized assessment of dangerousness that Plaintiff requests.[8]  Therefore, the Court will grant Defendants' Motion to Dismiss on Plaintiff's Second Amendment claim.

**B. Fifth Amendment Claims**

Plaintiff also argues that § 922(g)(4) violates his Fifth Amendment rights to Due Process and Equal Protection.  Defendants assert that Plaintiff's attack on § 922(g)(4) should be analyzed under a Second Amendment, not Fifth Amendment, framework.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994) (quoting *Graham v. Connor*, 480 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)).  The Sixth Circuit has specifically declined to consider claims that "conflate the enumerated Second Amendment right with Equal Protection and Due Process protections under the Fifth Amendment." *United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (reviewing appellant's Second Amendment argument but refusing to consider his more

---

[8]This conclusion is bolstered by Defendants' persuasive empirical evidence on the relationship between persons who have been involuntarily committed and their risk of violence, including suicide.  (See Docket no. 23, Page ID 169–75.)  Although Plaintiff argues that this evidence is irrelevant because he is no longer dangerous, intermediate scrutiny does not require a perfect relationship.  As such, a post-commitment review of an individual's dangerousness is not required for the statutory scheme to withstand intermediate scrutiny.

general due process and equal protection claims).  Similarly, the Ninth Circuit, citing *Albright*, 510 U.S. at 273, 114 S. Ct. at 813, has observed that "although the right to keep and to bear arms for self-defense is a fundamental right, that right is more appropriately analyzed under the Second Amendment."  *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) (internal citation omitted), *vacated by* 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming the district court's decision to dismiss the Second Amendment claim).

Because this Court has already determined that the fundamental right to keep and bear arms does not extend to Plaintiff under the Second Amendment, the Court finds that Plaintiff's Fifth Amendment claims must fail.

A separate Order will issue.

Dated:  January 29, 2013                                    /s/ Gordon J. Quist

GORDON J. QUIST
UNITED STATES DISTRICT JUDGE

12